## SOUTHARD v. PERRY AND TOWNSEND.

1. **Estoppel:** FORECLOSURE SALE. The receipt of the surplus remaining in the hands of the sheriff, and arising from a sale in foreclosure, with full knowledge of the method in which notice was served, estops the defendant from denying the sufficiency of such service.

2. **Execution:** SALE IN PARCELS. A special execution issued under a decree foreclosing a mortgage on a single lot commanded the sheriff "to proceed to and sell the said town lot, in conformity with the provisions of the statute in such cases made and provided:" *Held*, that the writ did not necessarily require a sale of the whole lot.

*Appeal from Monroe District Court:*

TUESDAY, DECEMBER 18.

SERVICE: FORECLOSURE: FORM OF EXECUTION: RATIFICATION OF SHERIFF'S SALE, &c.—The first suit above entitled was commenced October, 1865, under the fourth clause of section 3499 of the Revision, to set aside, on the ground of fraud, a decree of foreclosure obtained by defendants against the plaintiff, at the May Term, 1864, of the Monroe District Court. The fraud relied upon is this: That service of notice was made by defendants' direction upon plaintiff's (Southard's) wife, and upon the *plaintiff* by copy of notice left with plaintiff's wife, in Appanoose county, Iowa, as being the plaintiff's usual place of residence, when they (Perry and Townsend) well knew that plaintiff was then a resident of California, and not of Iowa.

The second suit above entitled was brought in Septem-

Southard v. Perry and Townsend.

ber, 1865, by Southard and wife to set aside the sheriff's sale and deed made under the decree above mentioned, of a certain lot in the town of Albia, Monroe county, Iowa, which lot was thirty-three feet front by one hundred and thirty-two feet deep.

This relief is claimed upon the ground that the special execution under which the sheriff's sale was made was irregular and illegal in ordering *all* of the mortgage property to be sold instead of so much only as might be necessary to satisfy the amount due.

The testimony, which is quite voluminous, shows that for some years prior to A. D. 1858, Southard, with his wife and children, resided in Albia, in Monroe county, in this State; that in the fall of that year (1858) he started for California, leaving his family in Albia; that soon after his departure his wife, pursuant to arrangements made by him, left Albia, taking with her all of her household furniture, and has since lived in Appanoose county, most of the time with her brother; that Southard has never since been back to Iowa, but has kept up constant correspondence with his wife, and who has been from year to year expecting his return, but he has from year to year postponed his return on account of his business in California.

The decree of foreclosure in favor of the defendants ordered "so much of the lot to be sold as might be necessary to satisfy the decree," which was for the sum of $44.06.

The special execution issued on this decree (which was, at the clerk's request, drawn up in its material parts by one of the defendants, as the clerk had no appropriate blanks), among other things, recites that "it was further ordered, adjudged and decreed that lot 10, &c., be sold to satisfy said judgment, and that a special execution issue therefor. You are therefore hereby commanded to pro-

ceed to and sell the said town lot *in conformity with the provisions of the statutes* in such case made and provided."

At the sale under this decree in June, 1864, plaintiff's agent was present, and the property sold, after a number of bids, for $296, to the defendants, who were the highest bidders. It was not divided, or offered in parcels. On the 16th day of April, 1864, the same property had been sold to defendants on a judgment in attachment obtained by one Travis, and assigned to defendants for $133.76. Defendants were the attorneys of record for Travis, who attached and made publication on the ground that Southard was a non-resident of Iowa. The amount realized by Southard from the two sales of the lot was $429.76. After satisfying the special execution, there remained in the sheriff's hands a surplus of $229 belonging to Southard. This the sheriff refused to pay over to Mrs. Southard unless she should produce evidence from her husband authorizing her to receive it, and the sheriff also refused to pay it over to Southard's agent (Boals) without an indemnifying bond. This bond the agent gave, and received the money from the sheriff; nor would the agent pay the money to the wife until expressly authorized by her husband. To enable his wife to get this money, Mr. Southard, in August, 1864, sent a general power of attorney to Mr. Boals. When this arrived the surplus moneys arising from the sale of the lot were paid over, pursuant to the direction of the husband, to Mrs. Southard, she executing this receipt:

"November 3, 1864. Received of W. H. Boals $229, which was paid over from E. P. Cone, sheriff of Monroe county.      (Signed.)      M. M. SOUTHARD."

The present actions to set aside the decree and sheriff's sale and deed thereunder, were commenced at the times

before stated. The answers denied the material portions of the petitions.

Decrees in both cases passing for the defendants, the plaintiffs appeal.

*Anderson & Dashiell* for the plaintiffs.

*Perry & Townsend* for the defendants.

DILLON, J.—I. *As to the suit to set aside the decree.* Respecting both cases, it may be remarked that they chiefly turn upon the evidence, which is quite lengthy. Where this is the case, we have adopted the practice, unless the cause is peculiar or unusually important, to state our conclusions of fact upon the testimony, without incumbering the reports with a lengthy review and discussion of it. Upon a careful consideration of the record, it is our opinion:

*1. Estoppel: foreclosure sale.*

1. That the plaintiffs have failed to show that the defendants, in making service upon the husband by copy of the original notice, left with his wife in Appanoose county, and, in taking their decree of foreclosure, meditated or practiced a *fraud* upon him.

2. Southard has failed clearly to establish that he was a resident of California, or that he had ever changed his legal residence or domicile from this State.

His long absence, it is true, favors the notion that he has taken up his residence in California. But, against this is the fact that he avowedly left for a temporary purpose; that his family remained here; that he corresponded with them, and gave, from time to time, his reasons for not then returning; that he retained his property in Iowa, &c. Besides, in his own deposition, he states no *facts*, such as exercising the right to vote, &c., showing that he was or regarded himself as being a citizen of California, or permanently located there. Defendants

had to procure service by publication, making affidavit that he could not be served in the State, or else make service in the manner they did, viz., by copy left with his wife, as a member of his family, regarding his absence as temporary, and his residence to be, in law, the residence of his family. The plaintiff's complaint is, in substance, this: That defendants ought to have *published* notice to him, instead of serving it upon his wife. Knowing what they did respecting the cause and purpose of his going, and of his expected return, and of the residence of his wife and family, we think defendants chose the proper course; at least, if they had made service by publication instead of upon his wife, plaintiff would have had more solid grounds of complaint than he now has. Besides, the plaintiff's own evidence shows that his wife wrote him that suit had been commenced and notice served upon her. But, aside from these considerations, we are of opinion, upon the the evidence (and this is, of itself, sufficient to defeat the relief asked),—

3. That the plaintiff, by authorizing his wife, after the decree, and when he knew how service had been made, to receive the surplus money arising from the sale, and by retaining such money for nearly a year after the receipt thereof, and not offering to restore it until this suit was commenced, has *ratified* the decree.

Again, neither in this case nor in the other has the plaintiff shown, either that the property was susceptible of an advantageous division, or that it failed to bring its value. There is not a particle of evidence upon either of these important points. Had this been established, plaintiff's application for relief would have been much strengthened.

It is true that the evidence shows that he could have successfully defended the foreclosure suit on the ground of usury; but, if dissatisfied with the decree or sale, he

Southard v. Perry and Townsend.

ought not to have received or authorized the reception of the money from the sheriff. He had knowledge of no material fact in relation to the mode of service and the decree when he brought this suit, that he did not know more than· a year previous, when he expressly and deliberately empowered his agent and wife to collect and receive the surplus money arising from the sale of the property, and meanwhile defendants have acted and acquired rights on the faith of their purchase.

II. *As to the suit to set aside the sheriff's sale and deed.* We do not think a fair construction of the writ in this case necessarily required the sheriff to sell the *whole* lot. It commanded him to sell *in conformity with the statute*, and the sheriff was not prohibited, by the writ, from making a division of the property, if this were practicable, nor from selling in parcel and only so much as might be necessary to satisfy the decree and costs. *Treiber* v. *Shafer*, 18 Iowa, 29, and authorities cited on this point.

*2. EXECUTION: sale in parcels.*

If it had been shown, by evidence, that the lot was susceptible of division ; that it was sold at a great sacrifice ; that the sheriff regarded himself as precluded, by the writ, from selling in parcels, and as bound, by the writ, to sell the *whole*, these circumstances would materially have corroborated the plaintiff's equity to have the sale set aside.

In addition to this the plaintiff's receipt of the surplus purchase-money, and its retention, as above stated, together with the delay to question the sale and restore the money received, are strong circumstances against the right to relief, admitting that the form of the writ was irregular. We cannot presume that a lot of. 33 feet front is susceptible of division, so that a sale *of the whole* should be set aside, without evidence showing it to have been advantageously divisible, or showing that it was sold

at a price less than its real value. As we reach the conclusion that the decrees below must be affirmed, without considering the depositions of the defendants themselves, it is unnecessary to decide whether the court ought to have excluded them on the grounds urged by the appellants.

Affirmed.