### ATCHISON, T. & S. F. RY. CO. v. DE SEDILLO.†

(Circuit Court of Appeals, Eighth Circuit. January 4, 1915.)

#### No. 4158.

1. RAILROADS ⊚═346—PERSONS ON TRACK—DEATH—PRESUMPTION OF DUE CARE.

Where it was claimed that decedent was killed while endeavoring to cross defendant's railroad tracks at a point where a much-used path passed over the tracks, a presumption that, in the absence of direct evidence to the contrary, decedent was exercising due care to discover and avoid the cars, could not apply until it was shown that he undertook to cross at the point claimed.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1117–1123; Dec. Dig. ⊚═346.]

2. RAILROADS ⊚═348—PERSONS ON TRACK—DEATH—EVIDENCE.

In an action for death of plaintiff's decedent on a railroad track, evidence held insufficient to warrant a finding that decedent was killed while attempting to cross the tracks at a point where a path led over them and where the railroad company would be required to exercise care to avoid injury to persons.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⊚═348.]

3. EVIDENCE ⊚═54—PRESUMPTIONS.

In the great majority of cases, a presumption cannot be based on another presumption.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 74; Dec. Dig. ⊚═54.]

---

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

† Rehearing denied March 19, 1915.

In Error to the District Court of the United States for the District of New Mexico; Wm. H. Pope, Judge.

Action by Josefita G. De Sedillo against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for a new trial.

W. C. Reid, of Albuquerque, N. M., and Robert Dunlap, of Chicago, Ill. (Gardiner Lathrop, of Chicago, Ill., H. L. Waldo, of East Las Vegas, N. M., and R. E. Twitchell, of Santa Fé, N. M., on the brief), for plaintiff in error.

Marron & Wood, of Albuquerque, N. M., for defendant in error.

Before CARLAND, Circuit Judge, and THOMAS C. MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. Defendant in error recovered judgment against the railway company for the killing of her husband, Rafael L. De Sedillo, by the alleged negligent operation of an engine and cars at Albuquerque, N. M. The railway company denied negligence, and alleged that the death of De Sedillo was attributable to his own negligence, and that he was intoxicated at the time he was struck by the cars of the railway company.

Some time after midnight on the 24th of March, 1912, De Sedillo left a saloon in Albuquerque. His body was found about 4 o'clock in the morning of that day upon the track in the switchyard of the railway company about 500 feet distant from a point at which a path led up to the embankment on which were laid the railway tracks of plaintiff in error. It is alleged that De Sedillo was struck while in the act of crossing the tracks at this point, after having gone along this path, with the intention of going to his mother's house, which was situated on the other side of the tracks. His mother lived in the outskirts of Albuquerque, and adjacent to the yards of the railway company. In order to reach her house from the saloon it was necessary for De Sedillo to cross the railway tracks at some point. He could have crossed at a public crossing called the Baralas Crossing, on Trumbull avenue, not very far from his mother's house. The path referred to ran across a piece of acreage. By the path the distance to her house was shorter than by way of the Baralas Crossing. There were four parallel tracks between the point where this path struck the right of way of the railway company, and the house of the mother of De Sedillo. It had rained during the night. At 7 o'clock that morning heel marks or footprints were found on the path near the railway track, and between the rails of the first track. The mother of De Sedillo heard cries during the night. From a point on the railway track near the path, and extending to a point about 25 yards from where the body was found, two marks appeared on the ground. The switching crew switched cars in the yard that night and morning.

The extent to which reliance is placed on inference in this case is shown from an excerpt from the statement to the jury, immediately after it was impaneled, by the attorney for defendant in error. After narrating the facts, as above stated, he said:

"We will ask you to infer from this evidence as a matter of fact that the deceased was coming, from where he had been with his friends, along the path; that he went up there and hesitated before going on the tracks; that when he stepped upon the tracks he suddenly found himself confronted with these cars coming down on him out of the darkness. * * * He found these cars suddenly coming down there through the darkness. He attempted to throw himself back off the track when the cars hit him, threw him backwards in the way they were going. He seized something under the car, the brake or some other exposed place, grasped it with his hands, and began to call out for help, and no one in charge of the train hearing him, and they dragged him, hanging on this way, 500 feet or thereabouts, and went over to cross tracks, and then his heel ran into the frog and caught and pulled him loose and he was killed."

Under the allegations of the complaint it was necessary for the plaintiff to prove:

(1) That the point at which it was alleged De Sedillo was struck was such a crossing as imposed on the railway company at all times the exercise of ordinary care to guard against injury to persons crossing at that point.

(2) That De Sedillo was struck at that point while attempting to cross.

(3) That the railway company was negligent.

For the purposes of this decision it may be assumed that the first and third essentials above enumerated were shown by the testimony. To sustain the second essential there is no direct testimony except the fact of the finding of the body of De Sedillo on the track at a point 500 feet below the alleged crossing, and the circumstances connected therewith. One foot was severed from the body, and was held in a frog. Blood was found near the body. From these facts the inference is warranted that De Sedillo was run over and killed by defendant's cars.

To show that De Sedillo was struck at the alleged crossing, the following facts are relied upon:

(1) The heel marks or footprints on the path near the track, and on the first track between the rails.

(2) Two marks along the track extending from the point near the heel marks, or footprints, to a point about 25 yards above the place where the body was found.

From these two facts the following inferences are sought to be drawn:

(1) That the heel marks, or footprints, were made by De Sedillo.

(2) That he was walking along the path going to his mother's house.

(3) That he was struck by the cars, which were being backed by a switch engine.

(4) That he caught hold of some projection of a car and was dragged about 500 feet.

(5) That as he was dragged his heels, or feet, made the two marks along the track.

(6) That his foot caught in a frog, and his hold was broken.

(7) That he was then run over and killed.

[1] In further support of plaintiff's case, benefit is claimed, in the absence of direct evidence, of the presumption that the deceased was not negligent; that before he undertook to cross the track he used due

care to discover and avoid the cars. Upon a proper state of facts that presumption is permissible. Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Baltimore & Potomac R. R. Co. v. Langrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; No. Pac. R. Co. v. Spike, 121 Fed. 44, 57 C. C. A. 384.

[2, 3] But, before that presumption can have application it must appear from the evidence that deceased undertook to cross at the point alleged. There is nothing to show this except the heel marks, or footprints. There is an utter absence of testimony that the heel marks, or footprints, were made by De Sedillo. The testimony on behalf of defendant in error tended to show that the path was generally used for the purpose of crossing the tracks. The heel marks, or footprints, were not discovered until about 7 o'clock in the morning. Two or three hours had intervened between the discovery of the footprints and the finding of the body of De Sedillo. No reasonable inference can be drawn that the heel marks, or footprints, were made by De Sedillo. In order to connect De Sedillo with the two marks along the track it was necessary to infer that at the instant of being struck he seized some handhold or projection on the car, and was dragged 500 feet.

"The requirement that the logical inference styled a presumption of fact should be a strong, natural, and immediate one, brings as a corollary the rule that no inference can legitimately be based upon a fact the existence of which itself rests upon a prior inference. In other words, there can be, in the great majority of cases, no presumption upon a presumption. On the contrary, the fact used as the basis of the inference, the terminus a quo, so to speak, must be established in a clear manner, devoid of all uncertainty." Chamberlayne's Modern Law of Evidence, § 1029, p. 1228; United States v. Ross, 92 U. S. 281, 23 L. Ed. 707; United States v. Pugh, 99 U. S. 265, 25 L. Ed. 322; Manning v. Ins. Co., 100 U. S. 693, 25 L. Ed. 761; Cunard S. S. Co. v. Kelley, 126 Fed. 610, 61 C. C. A. 532; Thayer v. Smoky Hollow Coal Co., 121 Iowa, 121, 96 N. W. 718; Duncan v. Chicago, R. I. & Pac. R. Co., 82 Kan. 230, 108 Pac. 101.

In order to find for defendant in error, it was necessary for the jury to infer at least six successive facts, each one, after the first, dependent on all that preceded.

There was uncontradicted testimony showing that De Sedillo was in a saloon in Albuquerque as late as 1 o'clock that night, and that he was in an intoxicated condition. Thompson, an employé of the railway company, testified that he saw De Sedillo in the yards of the railway company about 4 o'clock in the morning, and that he was in an intoxicated condition at that time. Upon being directed by Thompson as to the way to cross the railroad tracks, De Sedillo replied that he intended to go in the direction in which he was going. A short time after this conversation between Thompson and De Sedillo, the body of the latter was found in the yards. There is nothing to contradict the testimony of Thompson. Therefore, in addition to indulging in the inferences above mentioned, the jury disregarded the testimony of the one witness who stated that he saw and talked with De Sedillo a few minutes before he was killed.

Juries are the sole judges of the credibility of witnesses. There may have been something about Thompson's manner of testifying that

led the jury to disbelieve him. It was not within the province of the jury, however, to go further and supply by successive interdependent inferences the testimony necessary to sustain a verdict.

The motion on behalf of plaintiff in error, at the close of the testimony, for a directed verdict in its favor, should have been granted. For the failure to grant that motion the case is reversed and remanded for a new trial.